■ NEW YORK CITY HOUSING AUTHORITY, Appellant-Respondent, v MERCHANTS MUTUAL INSURANCE Co. et al., Respondents-Appellants. [844 NYS2d 223]—

Order, Supreme Court, Bronx County (Sallie Manzanet, J.), entered February 28, 2006, which, inter alia (1) denied motions for summary judgment by plaintiff Housing Authority and defendant Merchants Mutual Insurance (Merchants) declaring whether the Housing Authority is covered under certain insurance policies, (2) declared that Merchants owed the Housing Authority a defense in the underlying action but declined to order immediate payment of defense costs; and (3) granted defendant Stonewall's motion for summary judgment dismissing the Housing Authority's claim for breach of contract based on failure to procure insurance, unanimously modified, on the law, to declare that the subject policies do not afford coverage for the claims asserted in the underlying action, and that Merchants has no obligation to defend the Housing Authority in the underlying action, and otherwise affirmed, without costs.

The Housing Authority seeks a declaration that Merchants is obligated to defend and indemnify it in an underlying action in which the plaintiff (Esteves) alleges that he was shot on the Housing Authority's premises as a result of a faulty electromagnetic locking system installed at the entrance of his building by defendant Stonewall. The Housing Authority claims coverage as an insured or additional insured under three separate insurance policies: a commercial general liability (CGL) policy issued to Stonewall, an excess commercial catastrophic liability policy is-

sued to Stonewall (the excess policy), and an owners and contractors protective liability (OCP) policy issued to the Housing Authority.

Section II of the CGL policy, "Who is an Insured," was amended by an endorsement for "Additional Insured—Owners, Lessees or Contractors (Form B)," to "include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of your ongoing operations performed for that insured." The Housing Authority was listed in the declarations as an additional insured—owners, lessees or contractors.

The allegations in Esteves' complaint do not fall within the covered risk of liability arising out of Stonewall's ongoing operations, and thus did not trigger Merchants' duty to defend the Housing Authority (see *City of New York v Certain Underwriters at Lloyd's of London, England*, 15 AD3d 228 [2005]). Accordingly, we modify to declare that Merchants is not liable for the Housing Authority's defense costs.

As indicated, Merchants' cross motion for a declaration that no coverage exists under the relevant policies should have been granted. Concerning the CGL policy, the contract between Stonewall and the Housing Authority, which called for the installation and maintenance of both intercom and door locking systems at the project and other housing projects, provided that the intercom systems were guaranteed for a period of two years from the issuance of a certificate of final completion, and that the locking systems were guaranteed for a period of two years from final acceptance, excluding vandalism. "Final acceptance" occurred no later than spring 1997. Thus, at the time of the shooting, the installation work was complete and the parties were within the contractual two-year guarantee period. During this period, Stonewall was obligated to respond to maintenance calls from the Housing Authority within 24 hours, and to effect repairs to the system within 48 hours. The record contains no evidence of any such calls after 1997. Furthermore, what record evidence does exist shows that the locking system in Esteves' building was inoperable due to vandalism, which was a pervasive problem at the project, as admitted by the Housing Authority's witness. There is no record evidence that the doors were faulty due to poor workmanship or installation. Thus, we find that Esteves' injuries did not arise out of Stonewall's "ongoing operations performed for [the Housing Authority]."

Nor is the Housing Authority entitled to coverage under either the excess or OCP policy. The excess policy provides coverage for anyone to whom Stonewall was obligated by written

contract to provide liability insurance "but only with respect to operations by or on behalf of [Stonewall]," and for any insured under the CGL policy subject to the coverage limitations of that policy, i.e., "only with respect to liability arising out of [Stonewall's] ongoing operations performed for that insured." As discussed, Esteves' injuries did not arise out of Stonewall's operations, ongoing or otherwise, and thus, no coverage is afforded under the excess policy. The OCP policy, issued in the name of the Housing Authority, only afforded coverage for claims relating to Stonewall's work on a senior citizens center, at a different location, and does not apply to the premises on which Esteves was shot.

The Housing Authority's claim against Stonewall for failure to procure insurance coverage was properly dismissed. Stonewall procured the CGL coverage, which named the Housing Authority as an additional insured for claims arising out of Stonewall's "ongoing operations," satisfying Stonewall's obligation to procure liability insurance alleged to have been caused by or in the course of Stonewall's "operations" under the contract. While it is clear that Stonewall failed to procure the OCP coverage also contemplated by the contract, since the policy procured covered a senior citizens center, not the housing projects where Stonewall installed locks, such failure cannot be the proximate cause of any damages to the Housing Authority. Stonewall obligation was to procure OCP insurance covering the Housing Authority against "liability claims for bodily injury, . . . *arising from the operations of the Contractor* and his subcontractors for the limits of liability set forth in the preceding paragraph [i.e., a $500,000 per occurrence limit for bodily injury]" (emphasis added). As discussed, plaintiff's injuries did not arise from Stonewall's operations, and thus, even if Stonewall had maintained such a policy on the date of the shooting, it would not have afforded coverage for the Housing Authority's claim. Furthermore, although the CGL and excess policies were in effect at the time of the shooting, Stonewall had no contractual obligation to maintain such coverage. The Housing Authority's contract with Stonewall only required that Stonewall maintain liability coverage through the time that a certificate of final acceptance was issued.

We have considered and rejected the Housing Authority's other arguments. Concur—Mazzarelli, J.P., Marlow, Sullivan, Gonzalez and McGuire, JJ.