## Viveros v Maserati Realty, LLC

2024 NY Slip Op 31337(U)

April 15, 2024

Supreme Court, Kings County

Docket Number: Index No. 508782/20

Judge: Wavny Toussaint

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

At an IAS Term, Part 70 of the Supreme
Court of the State of New York, held in and
for the County of Kings, at the Courthouse, at
360 Adams Street, Brooklyn, New York, on
the 15th day of April, 2024.

P R E S E N T :
HON. WAVNY TOUSSAINT,
                              Justice.
------------------------------------------------------------------------X
RICARDO GUZMAN VIVEROS,

                              Plaintiff,
              -against-                                  Index No.: 508782/20

MASERATI REALTY, LLC, CH GOWANUS, LLC,          DECISION AND ORDER
CH GOWANUS HOLDINGS, LLC, NY DEVELOPERS
& MANAGERS, INC., NY DEVELOPERS &
MANAGEMENT, LLC, and FIRST QUALITY
ELECTRIC CORP.,
                              Defendants.
------------------------------------------------------------------------X

The following e-filed papers read herein:              NYSCEF Doc Nos.:

Notice of Motion/Order to Show Cause/
Petition/Cross Motion and
Affidavits (Affirmations) Annexed_____          85-87, 101-103, 128-130
                                                        148-149, 151-152, 154-155
Opposing Affidavits/Answer (Affirmations)_____        157-158, 160-161, 165-166
Affidavits/ Affirmations in Reply _____          170, 172, 174, 177, 179
Other Papers: _____          _____

Upon the foregoing papers, defendant First Quality Electric Corp. (First Quality)

moves (Seq. 05) for an order, pursuant to CPLR §3212, granting summary judgment

dismissing the complaint and any and all cross claims as asserted against it. Defendants

Maserati Realty LLC (Maserati), CH Gowanus, LLC (CH Gowanus), NY Developers &

Managers, Inc. (Managers), and NY Developers & Management, LLC (NY Developers)

(collectively referred to as the "Maserati Defendants") move (Seq. 06) for an order,

pursuant to CPLR §3212, granting them summary judgment: (1) dismissing the complaint

and any and all cross claim as asserted against them and (2) granting their cross claim

[* 1]

against First Quality. Plaintiff Ricardo Guzman Viveros (plaintiff) moves (Seq. 07) for an order, pursuant to CPLR §3212, granting him partial summary judgment on the issue of liability as against Maserati, CH Gowanus and NY Developers on his Labor Law §240(1) cause of action and on his Labor Law §241(6) cause of action to the extent that it is premised on Industrial Code (12 NYCRR) §23-1.30.

## BACKGROUND

In this action premised on common-law negligence and violations of Labor Law §§ 200, 240 (1) and 241 (6), plaintiff alleges that, on February 27, 2020, he suffered injuries while installing ductwork at an industrial building being renovated for office and retail use at 124 9th Street, Brooklyn, NY (premises), when the ladder on which he was standing moved and he fell to the floor. The building and land at issue were owned by Maserati and, pursuant to a 99-year ground lease, leased to CH Gowanus. CH Gowanus hired NY Developers as a construction manager/general contractor for the project which involved the gut renovation of the premises.[1] Pursuant to a prime contract, CH Gowanus hired First Quality to perform electrical work and the scope of First Quality's work under their contract included installing new electrical boxes and fixtures as well as installing and maintaining temporary lighting during construction (CH Gowanus – First Quality Contract, Rider 1, Scope of Work § 5). Pursuant to another prime contract, CH Gowanus hired non-

---

[1] The court notes that CH Gowanus' contract with NY Developers identifies NY Developers as a construction manager and limits its responsibility for overall site safety. Despite the language of the contract, however, Jacob Hamway, who testified as a witness on behalf of Maserati, CH Gowanus, and NY Developers, stated that NY Developers also acted as a general contractor and that its site staff, such as the project manager, assistant project manager, and superintendent, had authority to stop the work if they observed dangerous conditions or practices and would regularly walk the site to ensure that the subcontractors adhered to safe construction practices.

[* 2]

party On Target Sheet Metal Corp.,(On Target) to perform HVAC work that included the installation of ductwork. Plaintiff was employed by On Target as a ductwork installer.

According to plaintiff's deposition testimony, he had been working with Julian Pinera (Pinera) his helper, installing ductwork in a small room on the second floor of the premises for approximately a week before the accident. In order to perform this work, plaintiff and Pinera would each set-up their eight-foot-tall A-frame ladders approximately one to two feet from each other. Each would grab a hold of opposing ends of a three-and-one-half by two-and-one half foot piece of metal duct work, and then proceed to climb up their respective ladders holding the piece of ductwork in order to attach it to the portion of the ductwork that had already been installed. Just before the accident, plaintiff and Pinera had already positioned a piece of ductwork above them, and plaintiff, who was standing with his feet on the sixth rung of his ladder, was reaching above his head with his left hand to hold the duct in position with a pressure clamp while at the same time reaching up with his right hand to put in screws using a screwdriver. As plaintiff was installing the duct in this manner, the temporary lighting went out, plaintiff's ladder moved to plaintiff's left, and when it did so, plaintiff fell towards his right, striking an electrical panel as he fell to the floor. The ladder also ultimately fell to the floor. Plaintiff, however, did not know what caused the ladder to move.

When the lights went out, plaintiff testified that there was no light coming into the room and that he couldn't see a thing through the darkness. The lights remained out for approximately 20 minutes after the accident. Although plaintiff did not recall the lights going out while he was working in the room at issue during the week before the accident,

3

[* 3]

he alleges the lights had previously gone out on several occasions during his eight months working on the project. With respect to the subject ladder, plaintiff stated that he had used it before the day of the accident and had experienced no problems, issues or concerns with the ladder prior to the accident, and, if he had, he would have brought them to the attention of his supervisor. The floor of the room at issue was concrete and plaintiff and Pinera kept it free of garbage and debris.

In his deposition testimony, Pinera's description of how he and plaintiff performed their assignments is similar to plaintiff's description of same. Pinera also stated that the accident occurred after the lights went out while they were standing on their respective ladders installing a piece of ductwork. At the time the lights went out, Pinera was holding one end of the duct in place as plaintiff was installing a screw. Although Pinera did not witness plaintiff's fall because the lights went out, he was able to hear it. Pinera's ladder also moved when plaintiff fell, but he was able to steady himself by holding on to a pipe in the ceiling. Like plaintiff, Pinera also did not notice any issues with the ladders they were using. With respect to the lighting, Pinera stated that the temporary lighting had gone out on occasion during the course of the project, and that it had gone out once or twice in the three or four days they were working in the room before the accident.

In contrast to the testimony of plaintiff and Pinera, Antonio Grande Pajaro (Pajaro), who was First Quality's onsite supervisor and present at the project from 7:00 a.m. to 5:00 p.m. on a daily basis, testified at his deposition that the temporary lighting for the project stayed on 24 hours a day, 7 days a week, that he had received no complaints about the lighting going out, and that the lights did not go off and were not turned off during his time

4

[* 4]

on the project, which included the day of the accident. Pajaro also testified that the only way to shut down the temporary lights was to turn off the breaker in the electrical box, that this box was kept locked, and that First Quality's representatives were the only persons who had the keys for the box. The only other way for the lights to go out was if someone had damaged one of the light cables, and Pajaro testified that he was not aware of any such cables being cut or damaged while he worked onsite. Pajaro also stated that the electrical boxes in the room plaintiff was working in related to the emergency light system and had nothing to do with the temporary lighting.

## DISCUSSION

### *Standard of Review*

"To obtain summary judgment it is necessary that the movant establish his [or her] cause of action or defense sufficiently to warrant the court as a matter of law in directing judgment in his [or her] favor" (*Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]). "On the other hand, to defeat a motion for summary judgment the opposing party must show facts sufficient to require a trial of any issue of fact" (*id.*). If there are triable issues of fact as to how the alleged accident occurred, then the motion should be denied (*Lima v HY 38 Owner, LLC*, 208 AD3d 1181, 1183 [2d Dep't 2022]). "Summary judgment is a drastic remedy which should only be employed when there is no doubt as to the absence of triable issues" (*Murray v Community House Development Fund Company, Inc.*, 223 AD3d 675, 677 [2d Dep't 2024]; *Chiara v Town of New Castle*, 126 AD3d 111, 125 [2d Dep't 2015]).

5

Additionally, "[i]n determining a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party, and where conflicting inferences may be drawn, the court must draw those most favorable to the nonmoving party" (*Chiara*, 126 AD3d at 111; *Open Door Foods, LLC v Pasta Machines, Inc.*, 136 AD3d 1002, 1005 [2d Dep't 2016]). The function of the court on a motion for summary judgment is not to resolve issues of fact or determine matters of credibility, but merely to determine whether such issues exist (*Khutoryanskaya v Laser & Microsurgery, P.C.*, 222 AD3d 633, 635 [2d Dep't 2023]; *Schumacher v Pucciarelli*, 161 AD3d 1205, 1205 [2d Dep't 2018]).

### *Plaintiffs' Causes of Action*

Turning first to the parties' contentions relating to plaintiff's Labor Law §240(1) cause of action, that section imposes absolute liability on owners and contractors or their agents when their failure to protect workers employed on a construction site from the risks associated with elevation differentials proximately causes injury to a worker (*Wilinski v 334 E. 92nd Hous. Dev. Fund Corp.*, 18 NY3d 1, 3 [2011]; *Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 500 [1993]). With respect to falls from ladders, the Appellate Division, Second Department has emphasized that "[t]he mere fact that a plaintiff fell from a ladder does not, in and of itself, establish that proper protection was not provided" (*Karanikolas v Elias Taverna, LLC*, 120 AD3d 552, 555 [2d Dep't 2014] [internal quotation marks omitted]; *Cutaia v Board of Mgrs. of the 160/170 Varick St. Condominium*, 38 NY3d 1037, 1038-1039 [2021]; *Orellana v 7 W. 34th St., LLC*, 173 AD3d 886, 888 [2d Dep't 2019]). In order to find the absence of proper protection, "[t]here must

6

[* 6]

be evidence that the ladder was defective or inadequately secured and that the defect, or the failure to secure the ladder, was a substantial factor in causing the plaintiff's injuries" (*Karanikolas*, 120 AD3d at 555 [internal quotation marks omitted]; *Hugo v Sarantakos*, 108 AD3d 744, 745 [2d Dep't 2013]).

Here, there is no dispute that Maserati, CH Gowanus and NY Developers may each be held liable under Labor Law §240(1). Maserati may be held liable as an owner (*Gordon v Eastern Ry. Supply*, 82 NY2d 555, 559-560 [1993]; *Jara v Costco Wholesale Corp.*, 178 AD3d 687, 690 [2d Dep't 2019]), CH Gowanus may be held liable since it acted in the role of owner by contracting with the various contractors for the construction work at issue (*Gomez v 670 Merrick Rd. Realty Corp.*, 189 AD3d 1187, 1190 [2d Dep't 2020]; *Wicks v Leemilt's Petroleum, Inc.*, 103 AD3d 793, 795-796 [2d Dep't 2013]), and NY Developers may be held liable since, although it was identified as construction manager, it effectively acted as the general contractor within the meaning of sections 240 (1) and 241 (6) (*Walls v Turner Constr. Co.*, 4 NY3d 861, 863-864 [2005]; *Seales v Trident Structural Corp.*, 142 AD3d 1153, 1157-1158 [2d Dep't 2016]; *Pipia v Turner Constr. Co.*, 114 AD3d 424, 427 [1st Dep't 2014], *lv dismissed* 24 NY3d 1216 [2015]). There is also no dispute that plaintiff was performing covered altering work within the meaning of Labor Law § 240 (1) that was also ancillary to a larger construction project (*Sanatass v Consolidated Inv. Co., Inc.*, 10 NY3d 333, 337 [2008]; *Depass v Mercer Sq., LLC*, 219 AD3d 801, 802 [2d Dep't 2023]) and that plaintiff was working at a significant elevation differential within the meaning of that section (*Swiderska v New York Univ.*, 10 NY3d 792, 793 [2008]; *Doto v Astoria Energy II, LLC*, 129 AD3d 660, 662 [2d Dep't 2015]).

7

[* 7]

Contrary to defendants' contentions, plaintiff's deposition testimony that he fell to the ground after the ladder moved shows that the ladder was inadequately secured and is sufficient to establish his prima facie entitlement to summary judgment on his Labor Law § 240 (1) cause of action (*Hoxhaj v West 30th HL LLC*, 195 AD3d 503, 504 [1st Dep't 2021] [ladder wobbled]; *Salinas v 64 Jefferson Apts., LLC*, 170 AD3d 1216, 1222 [2d Dep't 2019] [ladder moved]; *Cabrera v Arrow Steel Window Corp.*, 163 AD3d 758, 759-760 [2d Dep't 2018] [ladder moved]; *Alvarez v Vingsan L.P.*, 150 AD3d 1177, 1179 [2d Dep't 2017]). In view of plaintiff's deposition testimony regarding the movement of the unsecured ladder, plaintiff was not required to show that the ladder was defective in order to make out his prima facie burden (*Rodriguez v Milton Boron, LLC*, 199 AD3d 537, 538 [1st Dep't 2021]; *Von Hegel v Brixmor Sunshine Sq., LLC*, 180 AD3d 727, 730 [2d Dep't 2020]; *Mingo v Lebedowicz*, 57 AD3d 491, 493 [2d Dep't 2008]) and had no obligation to explain why it moved (*Hoxhaj*, 195 AD3d at 504; *Salinas*, 170 AD3d at 1222 [ladder moved for no apparent reason]; *Cabrera*, 163 AD3d at 759-760 [ladder moved for no apparent reason]).

The Maserati Defendants, in opposition, argue that plaintiff asserted that the accident was caused by the lights going out and, as a result, that the cause of the accident was unrelated to the need for a Labor Law § 240 (1) device. It is true that cases addressing section 240 (1) have held, for example, that a fall solely caused by a tripping hazard unrelated to the ladder or scaffold at issue does not make out a section 240 (1) violation (*see Cohen v Memorial Sloan-Kettering Cancer Ctr.*, 11 NY3d 823, 825 [2008]; *Nieves v Five Boro A.C. & Refrig. Corp.*, 93 NY2d 914, 916 [1999]; *Krarunzhiy v 91 Cent. Park W.*

8

[* 8]

*Owners Corp.*, 212 AD3d 722, 723-724 [2d Dep't 2023]) and a case involving a plaintiff who simply lost his balance and fell because of lights going out might be encompassed within such a rule (*see Jurski v City of New York*, 204 AD3d 983, 984 [2d Dep't 2022]; *cf. Cutaia*, 38 NY3d at 1039 [factual issue as to adequacy of ladder or need for additional safety devices presented by plaintiff's fall from ladder after receiving electric shock]). The Maserati Defendants argument, however, ignores plaintiff's deposition testimony that he fell after the ladder itself moved, which as discussed above, is in and of itself, sufficient to demonstrate a section 240 (1) violation. Further, even if it could be found that the ladder ended up moving because plaintiff moved his body when the lights went out, such an action by plaintiff would not eliminate the movement of the ladder as a proximate cause of plaintiff's accident (*see Green v Evergreen Family Ltd. Partnership*, 210 AD3d 1496, 1497-1498 [4th Dep't 2022]; *Messina v City of New York*, 148 AD3d 493, 494 [1st Dep't 2017]; *Goodwin*, 144 AD3d at 747; *Ruiz v WDF, Inc.*, 45 AD3d 758, 758 [2d Dep't 2007]).[2] Moreover, the Maserati Defendants have presented no facts suggesting that there is an issue with plaintiff's credibility sufficient to question his testimony regarding the ladder's movement (*see e.g. Klein v City of New York*, 89 NY2d 833, 834-835 [1996]; *Cardenas v 111-127 Cabrini Apts. Corp.*, 145 AD3d 955, 957 [2d Dep't 2016]; *Melchor v Singh*, 90 AD3d 866, 869 [2d Dep't 2011]; *cf. Jurski*, 204 AD3d at 984).

---

[2] There are no evidentiary facts suggesting that plaintiff simply lost his balance and fell and caused the ladder to fall as he was already falling to the ground (*Woods v Design Ctr., LLC*, 42 AD3d 876, 877 [4th Dep't 2007]; *cf. Durkin v Long Is. Power Auth.*, 37 AD3d 400, 401 [2d Dep't 2007]; *Costello v Hapco Realty*, 305 AD2d 445, 446-447 [2d Dep't 2003]).

9

[* 9]

Turning to plaintiff's Labor Law § 241 (6) cause of action, under that section an owner, general contractor or their agent may be held vicariously liable for injuries to a plaintiff where the plaintiff establishes that the accident was proximately caused by a violation of an Industrial Code section stating a specific positive command that is applicable to the facts of the case (*Rizzuto v L.A. Wenger Contr. Co.*, 91 NY2d 343, 349-350 [1998]; *Honeyman v Curiosity Works, Inc.*, 154 AD3d 820, 821 [2d Dep't 2017]). Here, plaintiff, in his bill of particulars, premises his section 241 (6) cause of action on violations of Industrial Code 12 NYCRR §§ 23-1.7 (f), 23-1.21, and 23-1.30.

Initially, the Maserati Defendants have demonstrated their prima facie entitlement to dismissal of the Labor Law § 241 (6) cause of action to the extent that it is premised on Industrial Code (12 NYCRR) § 23-1.7 (f) (requiring stairways, ramps or runways to provide worker access to different working levels above or below the ground). Section 23-1.7 (f) is inapplicable here since plaintiff was using the ladder at issue as a work platform, not as a means of accessing working levels above or below the ground within the meaning of that section (*Ramones v 425 Country Rd., LLC*, 217 AD3d 977, 980 [2d Dep't 2023]; *Miranda v NYC Parntership Hous. Dev. Fund Co., Inc.*, 122 AD3d 445, 446 [1st Dep't 2014]). Plaintiff, who failed to address section 23-1.7 (f) in his opposition papers, has abandoned reliance on section 23-1.7 (f) and the Maserati Defendants are entitled to dismissal of the section 241 (6) cause of action to the extent that it is based on that section (*Debennedetto v Chetrit*, 190 AD3d 933, 936 [2d Dep't 2021]).

With respect to Industrial Code (12 NYCRR) § 23-1.21, plaintiff, in his bill of particulars, did not identify which of the subsections of section 23-1.21 were violated here

10

[* 10]

(*Caminiti v Extell W. 57th St. LLC*, 166 AD3d 440, 441 [1st Dep't 2018]). In opposition to the Maserati Defendants' motion, however, plaintiff asserted that section 23-1.21 (b) (3) (iv), which provides that "All ladders shall be maintained in good condition. A ladder shall not be used if any of the following conditions exist: . . . If it has any flaw or defect of material that may cause ladder failure," was violated. While plaintiff could properly specify a violation of this subsection for the first time in his opposition papers (*see Simmons v City of New York*, 165 AD3d 725, 729 [2d Dep't 2018]), plaintiff's own testimony was that he did not have any problem or issue with the ladder prior to the accident and that he was able to set it up and lock it into position without incident. In the absence of any evidence in the record suggesting that the ladder had a flaw or defect of material that could have caused it to fail, and, given that the accident itself does not allow anything more than a speculative inference that the ladder had such a defect, the Maserati Defendants' are entitled to dismissal of the Labor Law § 241 (6) cause of action to the extent it is premised on section 23-1.21 (*Yao Zong Wu v Zhen Jia Yang*, 161 AD3d 813, 815 [2d Dep't 2018]; *Croussett v Chen*, 102 AD3d 448, 448-449 [1st Dep't 2013]).

Factual issues as to whether there were problems with the lighting at the jobsite require denial of both plaintiff's motion and the Maserati Defendants' motion with respect to whether Industrial Code (12 NYCRR) § 23-1.30, which addresses illumination at construction sites,[3] was violated. The testimony of plaintiff and Pinera that the lights went

---

[3] Industrial Code (12 NYCRR) §§ 23-1.30 provides that, "Illumination sufficient for safe working conditions shall be provided wherever persons are required to work or pass in construction, demolition and excavation operations, but in no case shall such illumination be less than 10 foot candles in any area where persons are required to work nor less than five foot candles in any passageway, stairway, landing or similar area where persons are required to pass."

11

out on several occasions and that when the lights went out at the time of the accident it was pitch black in the room at issue is sufficient to demonstrate factual issues as to whether the amount of light in the room, at the time of the accident, violated section 23-1.30 (*Murphy v 80 Pine, LLC*, 208 AD3d 492, 497-498 [2d Dep't 2022]; *see also Favaloro v Port Auth. of N.Y. & N.J.*, 191 AD3d 524, 525 [1st Dep't 2021]; *Capuano v Tishman Constr. Corp.*, 98 AD3d 848, 850-851 [1st Dep't 2012]; *Murphy v Columbia Univ.*, 4 AD3d 200, 202 [1st Dep't 2004]) and whether "someone within the chain of the construction project was negligent in not exercising reasonable care, or acting within a reasonable time, to prevent or remediate the hazard" arising from the lighting issues at the jobsite (*Rizzuto*, 91 NY2d at 351; *Bocanegra v Chest Realty Corp.*, 169 AD3d 750, 751-752 [2d Dep't 2019]).

On the other hand, the above noted testimony of Pajaro, a First Quality supervisor, that there was no problem with the lighting is sufficient to demonstrate a factual issue as to whether the lighting had anything to do with the accident. Moreover, plaintiff's own testimony, while showing that the lights going out was temporally related to the movement of the ladder, fails to demonstrate, as a matter of law, that the lights going out was a proximate cause of the ladder's movement or of plaintiff's fall.

Regarding the portion of First Quality's motion addressed to plaintiff's Labor Law §§ 240 (1) and 241 (6) causes of action, First Quality asserts that it is entitled to summary judgment dismissing these claims because it was not an owner, general contractor or statutory agent thereof within the meaning of those sections. In his opposition papers, plaintiff has agreed to withdraw the section 240 (1) and 241 (6) causes of action as against First Quality. While, in the face of such an agreement by plaintiff, this court would

12

[* 12]

normally grant First Quality's motion with respect to those causes of action, the Maserati Defendants have opposed this portion of First Quality's motion, asserting that First Quality was in fact a statutory agent for purposes of section 240 (1) and 241 (6) liability. The Maserati Defendants may oppose the dismissal of those causes of action, despite the fact that they have cross claim for indemnification, contribution and breach of the insurance provisions against First Quality, because First Quality's liability under sections 240 (1) and 241 (6) may have a bearing on the jury's apportionment of liability for the accident (*Belmer v HHM Assoc., Inc.*, 101 AD3d 526, 527-528 [1st Dep't 2012]; *see also Cunha v City of New York*, 12 NY3d 504, 508-510 [2009]; *Frank v Meadowlakes Dev. Corp.*, 6 NY3d 687, 691-693 [2006]; *cf.* CPLR 1602 [1] [a], [8]).

Since the responsibilities CH Gowanus delegated to First Quality in their contract included maintaining the temporary lighting at issue, this control over lighting could render it liable as a statutory agent under Labor Law § 241 (6) to the extent that such cause of action is premised on a violation of Industrial Code (12 NYCRR) § 23-1.30. This factual issue requires denial of First Quality's motion relating to section 241 (6) as premised upon section 23-1.30 only (*McKinney v Empire State Dev. Corp.*, 217 AD3d 574, 576 [1st Dep't 2023]; *Vitucci v Durst Pyramid LLC*, 205 AD3d 441, 444 [1st Dep't 2022]; *DeMaria v RBNB 20 Owner, LLC*, 129 AD3d 623, 626 [1st Dep't 2015]; *see also Drzewinski v Atlantic Scaffold & Ladder Co.*, 70 NY2d 774, 776-777 [1987]; *Sanchez v 404 Park Partners, LP*, 168 AD3d 491, 492 [1st Dep't 2019]). On the other hand, because First Quality had no authority over other aspects of plaintiff's work, including plaintiff's methods and manner of performing his work on the ladder, First Quality is entitled to dismissal of plaintiff's

13

[* 13]

Labor Law § 240 (1) cause of action and dismissal of his Labor Law § 241 (6) claim to the extent it is premised on Industrial Code sections other than section 23-1.30 (*Vitucci*, 205 AD3d at 444; *see also Woodruff v Islandwide Carpentry Contrs., Inc.*, 222 AD3d 920, 921 [2d Dep't 2023]; *Fiore v Westerman Constr. Co., Inc.*, 186 AD3d 570, 571 [2d Dep't 2020]).

Turning to plaintiff's common-law negligence and Labor Law § 200 causes of action, when such claims arise out of alleged defects or dangers in the methods or materials of the work, "there is no liability under the common law or Labor Law § 200 unless the owner or general contractor exercised supervision or control over the work performed" (*Carranza v JCL Homes, Inc.*, 210 AD3d 858, 860 [2d Dep't 2022], quoting *Cun-En Lin v Holy Family Monuments*, 18 AD3d 800, 801 [2d Dep't 2005]; *see also Barreto v Metropolitan Transp. Auth.*, 25 NY3d 426, 435 [2015]; *Valencia v Glinski*, 219 AD3d 541, 545 [2d Dep't 2023]). Where a premises condition is at issue, property owners and general contractors may be held liable under common-law negligence and for a violation of Labor Law § 200 if they either created the dangerous condition that caused the accident or had actual or constructive notice of the dangerous condition that caused the accident (*Abelleira v City of New York*, 120 AD3d 1163, 1164 [2d Dep't 2014]; *Bauman v Town of Islip*, 120 AD3d 603, 605 [2d Dep't 2014]; *Ortega v Puccia*, 57 AD3d 54, 61 [2d Dep't 2008]). Similarly, liability under Labor Law § 200 and common-law negligence may be imposed upon a subcontractor where it had control over the work site and either created the allegedly dangerous condition or had actual or constructive notice of same (*Vita v New York Law*

14

*Sch.*, 163 AD3d 605, 607 [2d Dep't 2018]; *Wolf v KLR Mech., Inc.*, 35 AD3d 916, 918 [3d Dep't 2006]).

Here, the record, including plaintiff's deposition testimony that On Target provided the equipment he used at the worksite and that he received all of his instructions regarding his work from On Target, demonstrates, prima facie, that defendants did not supervise or control plaintiff's work for purposes of plaintiff's Labor Law § 200 and common-law negligence causes of action (*Wilson v Bergon Constr. Corp.*, 219 AD3d 1380, 1383 [2d Dep't 2023]; *Kefaloukis v Mayer*, 197 AD3d 470, 471 [2d Dep't 2021]; *Lopez v Edge 11211, LLC*, 150 AD3d 1214, 1215-1216 [2d Dep't 2017]). However, the deposition testimony of plaintiff and Panera regarding the lighting going out on several occasions demonstrates the existence of factual issues as to whether the problems with the lighting constituted a dangerous property condition. The Maserati Defendants, in moving have failed to demonstrate, as a matter of law, that they did not have control over the worksite and/or that they did not have actual or constructive notice of the issues with the lighting (*DeVita v NYY Steak Manhattan, LLC*, 214 AD3d 477, 478 [1st Dep't 2023]; *Simon v Granite Building 2, LLC*, 170 AD3d 1227, 1232-1233 [2d Dep't 2019], *lv denied* 34 NY3d 904 [2019]; *Honeyman*, 154 AD3d at 822).[4] Contrary to the Maserati Defendants' contentions, the fact that they delegated the installation and maintenance of the temporary lighting to First Quality is insufficient to demonstrate, in and of itself, that they did not retain control over the worksite or authority to address the lighting issues. These factual

---

[4] The court notes that, in moving, Maserati and CH Gowanus have made no argument and pointed to no evidence suggesting that their liability should be considered differently from that of NY Developers.

15

issues with respect to the lighting also preclude dismissal of the section 200 and common-law negligence claims against First Quality, the entity responsible for installing and maintaining the temporary lighting (*Miano v Battery Place Green LLC*, 117 AD3d 489, 489-490 [1st Dep't 2014]; *Beltran v Navillus Tile, Inc.*, 108 AD3d 414, 415 [1st Dep't 2013]).

### *Contribution, Indemnification, and Insurance Issues*

In view of the above discussed factual issues with respect to First Quality's liability for the lighting conditions on the premises, First Quality is not entitled to dismissal of the Maserati Defendants' cross-claim for contribution from it (*Romano v New York City Tr. Auth.*, 213 AD3d 506, 508 [1st Dep't 2023]; *Randazzo v Consolidated Edison Co. of N.Y., Inc.*, 177 AD3d 796, 798 [2d Dep't 2019]; *State of New York v Defoe Corp.*, 149 AD3d 889, 890 [2d Dep't 2017]). The portion of the Maserati Defendants' motion seeking summary judgment on their contribution claims against First Quality is denied as a party is only entitled to recover on a contribution claim upon a jury determination of apportionment of damages and the payment of damages in excess of that party's proportionate share of the judgment (*Klinger v Dudley*, 41 NY2d 362, 369 [1977]; CPLR 1401, 1402).

The issues with respect to First Quality's own negligence also require denial of the portion of its motion seeking dismissal of the common-law indemnification claims against it (*Zong Wang Yang v City of New York*, 207 AD3d 791, 796-797 [2d Dep't 2022]). The portion of the Maserati Defendants' motion seeking summary judgment in its favor on its common-law indemnification claim against First Quality must be denied in view of the

[* 16]

factual issues with respect to First Quality's negligence and the Maserati Defendants' own negligence (*McDonnell v Sandaro Realty, Inc.*, 165 AD3d 1090, 1097-1098 [2d Dep't 2018]; *see also McCarthy v Turner Constr., Inc.*, 17 NY3d 369, 377-378 [2011]).

Regarding the contractual indemnification provision, it provides, as is relevant here, that First Quality "shall defend, indemnify, and hold harmless" each of the Maserati Defendants from claims "arising or alleged to arise from . . . the performance of the Work under this Agreement, whether performed by Contractor, its Subcontractors and agents, or anyone employed by any of them or anyone for whose acts any of them may be liable . . . regardless of whether or not it is caused in part by any or all of the Indemnitees hereunder, provided that this indemnity shall not extend to the liability of any Indemnitee from its own negligence or willful misconduct" (CH Gowanus – First Quality contract, Rider 1, § 15 (a) and Rider 1, Exhibit B § e). Indemnification provisions like this that apply for claims "arising" out of the work are broadly read in favor of the indemnitees and do not require a showing of negligence (*Adagio v New York State Urban Dev. Corp.*, 168 AD3d 602, 603 [1st Dep't 2019]). However, in view of the factual issues as to whether the lighting had anything to do with the accident, and thus, whether the claim arose from First Quality's work within the meaning of the indemnification provision, the portions of First Quality's motion and the Maserati Defendants' motion relating to contractual indemnification must be denied (*Nugra v Aramalla*, 191 AD3d 683, 686 [2d Dep't 2021]; *Adagio*, 168 AD3d at 603; *DeMaria*, 129 AD3d at 626-627; *Robbins v Goldman Sachs Headquarters, LLC*, 102 AD3d 414, 415 [1st Dep't 2013]).

With respect to the breach of contract for failure to obtain insurance naming the Maserati Defendants as additional insureds cross claim, First Quality has submitted a copy of its general liability policy that contains a blanket additional insured endorsement providing that:

> "Who Is An Insured is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for 'bodily injury', 'property damage' or 'personal and advertising injury' caused, in whole or in part, by: 1. Your acts or omissions; or 2. The acts or omissions of those acting on your behalf; in the performance of your ongoing operations for the additional insured."

Based on this endorsement, which also governs who is an additional insured on the umbrella policy obtained by First Quality,[5] First Quality's insurer, in a letter dated January 6, 2021, disclaimed coverage for Maserati and NY Developers because they did not directly contract with First Quality. While First Quality's insurer, in a letter also dated January 6, 2021, agreed to provide a defense to CH Gowanus, it did so with a full reservation of rights based on the portion of the endorsement limiting additional insured coverage for liability "caused whole or in part by . . . [First Quality's] acts or omissions . . . in the performance of [First Quality's] ongoing operations for the additional insured."

---

[5] The "Who is an Insured" provision of the umbrella policy provides, as is relevant here, that an insured includes "[a]ny additional insured under the scheduled underlying general liability and professional errors and omissions policy will automatically be an insured under this insurance" (Umbrella Policy, § II [3]).

18

[* 18]

First Quality correctly asserts that a blanket additional insured endorsement may generally satisfy the additional insured requirements of a construction contract (*Langer v MTA Capital Constr. Co.*, 184 AD3d 401, 402-403 [1st Dep't 2020]; *Perez v Morse Diesel Intl., Intl., Inc.*, 10 AD3d 497, 498 [1st Dep't 2004]; *see also Kassis v Ohio Cas. Ins. Co.*, 12 NY3d 595, 599-600 [2009]) and that disclaimer letters, in and of themselves, are generally insufficient to demonstrate that a party failed to obtain the required insurance (*Perez*, 10 AD3d at 498; *KMO-361 Realty Assoc. v Podbielski*, 254 AD2d 43, 44 [1st Dep't 1998]; *Garcia v Great Atl. & Pac. Tea Co.*, 231 AD2d 401, 403 [1st Dep't 1996]; *see also Dorset v 285 Madison Owner LLC*, 214 AD3d 402, 404 [1st Dep't 2023]; *Binasco v Break-Away Demolition Corp.*, 256 AD2d 373, 375 [2d Dep't 1998]). Here, however, the disclaimer letter shows that First Quality's insurer denied coverage to both Maserati and NY Developers based on language in the endorsement that is essentially the same as language that has been found to limit coverage to entities that are in direct contractual privity with the named insured (*Arch Specialty Ins. Co. v Nautilus Ins. Co.*, 213 AD3d 404, 405 [1st Dep't 2023]; *Dynatec Contr., Inc. v Burlington Ins. Co.*, 184 AD3d 475, 475 [1st Dep't 2020]; *see also Gilbane v Bldg. Co./TDX Constr. Corp. v St. Paul Fire & Mar. Ins. Co.*, 31 NY3d 131, 140 [2018]). As such, there are at least factual issues as to whether First Quality breached the terms of its contract with CH Gowanus, which required it to obtain insurance that named both Maserati and NY Developers as additional insureds (*Roldan v New York Univ.*, 81 AD3d 625, 629 [2d Dep't 2011]; *Bachrow v Turner Constr. Corp.*, 46 AD3d 388, 388 [1st Dep't 2007]; *Clapper v County of Albany*, 188 AD2d 774, 775-776 [3d Dep't 1992]).

19

[* 19]

On the other hand, this court finds that the Maserati Defendants have failed to demonstrate their entitlement to summary judgment in their favor based on First Quality's failure to get the correct insurance. Namely, although the language of the insurance procurement provision of CH Gowanus' contract with First Quality does not expressly limit First Quality's insurance procurement duties with any particular language, courts have held that such contracts requiring that parties be named as additional insureds "mean that the additional insured is insured for all liability arising out of the activities covered by the agreement" (*Ceron v Rector*, 224 AD2d 475, 476 [2d Dep't 1996]; *Roblee v Corning Community Coll.*, 134 AD2d 803, 804-805 [3d Dep't 1987], *lv denied* 72 NY2d 803 [1988]; *see also Yondt v Boulevard Mall Co.*, 306 AD2d 882, 883 [4th Dep't 2003]; *Belcastro v Hewlett-Woodmere Union Free School Dist. No. 14*, 286 AD2d 744, 746-747 [2d Dep't 2001]). As such, if it is found that liability here did not arise out of First Quality's activities on the project, its obligation to obtain additional insured coverage would not be triggered and First Quality's failure to obtain appropriate coverage would not have resulted in any damages (*Nicholson v Sabey Data Ctr. Props., LLC*, 205 AD3d 620, 622 [1st Dep't 2022]; *New York City Hous. Auth. v Merchants Mut. Ins. Co.*, 44 AD3d 540, 542 [1st Dep't 2007]; *Belcastro*, 286 AD2d 747).[6]

Finally, the Maserati Defendants are entitled to dismissal of the First Quality's cross claim for contractual indemnification and breach of contract for failure to obtain insurance

---

[6] The Court notes that requiring coverage for liability arising out of First Quality's activities may be broader than the additional insured endorsement at issue here that covers liability for First Quality's "acts or omission," and, if liability is found to have arisen out of First Quality's activities but not an act or omission, CH Gowanus might have grounds for a breach of contract claim in the event that First Quality's insurer disclaims coverage for CH Gowanus based on its acts or omissions language in its endorsement (*Bachrow*, 46 AD3d at 388; *Clapper v County of Albany*, 188 AD2d 774, 775-776 [3d Dep't 1992]; *Roblee*, 134 AD2d at 804-805).

20

because their contract has no provision requiring the Maserati Defendants to indemnify First Quality or obtain insurance benefiting First Quality. The factual issues regarding the liability of the Maserati Defendants' and First Quality for the accident preclude dismissal of First Quality's cross claim against the Maserati Defendants for common-law indemnification and contribution.

## CONCLUSION

All arguments raised on the motions and evidence submitted by the parties in connection thereto have been considered by this Court, regardless of whether they are specifically discussed herein.

Accordingly, it is hereby

**ORDERED**, that First Quality's motion (Seq. 05) is granted to the extent that plaintiff's Labor Law §240(1) cause of action is dismissed as against it and plaintiff's Labor Law §241(6) cause of action is dismissed with respect to Industrial Code 12 NYCRR §§ 23-1.7 (f) and 23.1.21. First Quality's motion is otherwise denied; and it is further

**ORDERED**, that the Maserati Defendants' motion (Seq. 06) is granted to the extent that plaintiff's Labor Law §241(6) cause of action is dismissed with respect to Industrial Code (12 NYCRR) §§ 23-1.7 (f) and 23-1.21 and granted to the extent that First Quality's cross claim against them for contractual indemnification and breach of contract for failure to obtain insurance are dismissed. The Maserati Defendants' motion is otherwise denied; and it is further

**ORDERED**, that plaintiff's motion (Seq. 07) is granted to the extent of partial summary judgment on the issue of liability with regard to the Labor Law § 240 (1) cause

21

[* 21]

of action as against Maserati, CH Gowanus and NY Developers; plaintiff's motion is otherwise denied.

In addition, in view of the parties' stipulation discontinuing the action as against CH Gowanus Holdings, LLC (NYSCEF Doc. No. 41), the caption is amended to read as follows:

-----------------------------------------------------------------------X
RICARDO GUZMAN VIVEROS,

                         Plaintiff,

-against-                                       Index No.: 508782/20

MASAERATI REALTY, LLC, CH GOWANUS, LLC,
NY DEVELOPERS & MANAGERS, INC., NY
DEVELOPERS & MANAGEMENT, LLC, and FIRST
QUALITY ELECTRIC CORP.,
                        Defendants.
-----------------------------------------------------------------------X

This constitutes the decision and order of the court.

ENTER

_____
J.S.C.

HON. WAVNY TOUSSAINT
J. S. C.