Green v Evergreen Family Ltd. Partnership (2022 NY Slip Op 06588)

Green v Evergreen Family Ltd. Partnership

2022 NY Slip Op 06588

Decided on November 18, 2022

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on November 18, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., CENTRA, PERADOTTO, LINDLEY, AND NEMOYER, JJ.

749 CA 21-01817

[*1]BRADFORD GREEN, PLAINTIFF-RESPONDENT-APPELLANT,
v
EVERGREEN FAMILY LIMITED PARTNERSHIP, EVERGREEN II FAMILY LIMITED PARTNERSHIP, EVERGREEN FAMILY LIMITED PARTNERSHIP, DOING BUSINESS AS PRECISION WASH, AND JAMES M. DONEGAN FAMILY TRUST, DEFENDANTS-APPELLANTS-RESPONDENTS. 

GOLDBERG SEGALLA LLP, SYRACUSE (AARON M. SCHIFFRIK OF COUNSEL), FOR DEFENDANTS-APPELLANTS-RESPONDENTS.
LONGSTREET & BERRY, LLP, FAYETTEVILLE (MARTHA L. BERRY OF COUNSEL), FOR PLAINTIFF-RESPONDENT-APPELLANT. 

 Appeal and cross appeal from an order of the Supreme Court, Oneida County (David A. Murad, J.), entered November 30, 2021. The order granted in part and denied in part the motion of defendants for summary judgment and the motion of plaintiff for partial summary judgment. 
It is hereby ORDERED that the order so appealed from is affirmed without costs.
Memorandum: Plaintiff commenced this action to recover damages for injuries he sustained when he fell from an A-frame ladder while working on a 10-foot-high car wash overhead door. Defendants moved for summary judgment dismissing the amended complaint, and plaintiff moved for partial summary judgment on liability and for summary judgment dismissing, inter alia, defendants' 14th affirmative defense alleging that plaintiff was the sole proximate cause of his injuries. Defendants appeal and plaintiff cross-appeals from an order that, among other things, denied their motions with respect to the Labor Law § 240 (1) claim and granted plaintiff's motion with respect to the 14th affirmative defense. We affirm.
On their respective appeal and cross appeal, the parties contend that Supreme Court erred in denying their motions with respect to the Labor Law § 240 (1) claim because, according to defendants, plaintiff was not engaged in activity covered by the statute at the time of his accident and, according to plaintiff, he was. " '[I]t is well settled that the statute does not apply to routine maintenance in a non-construction, non-renovation context' " (Ozimek v Holiday Val., Inc., 83 AD3d 1414, 1415 [4th Dept 2011]; see Esposito v New York City Indus. Dev. Agency, 1 NY3d 526, 528 [2003]). "Whether a particular activity constitutes a 'repair' or routine maintenance must be decided on a case-by-case basis, depending on the context of the work" (Dos Santos v Consolidated Edison of N.Y., Inc., 104 AD3d 606, 607 [1st Dept 2013]; see Pieri v B & B Welch Assoc., 74 AD3d 1727, 1728 [4th Dept 2010]). "Delin[e]ating between routine maintenance and repairs is frequently a close, fact-driven issue . . . , and [t]hat distinction depends upon whether the item being worked on was inoperable or malfunctioning prior to the commencement of the work . . . , and whether the work involved the replacement of components damaged by normal wear and tear" (Cullen v AT & T, Inc., 140 AD3d 1588, 1589 [4th Dept 2016] [internal quotation marks omitted]; see Wolfe v Wayne-Dalton Corp., 133 AD3d 1281, 1282 [4th Dept 2015]). Here, the evidence submitted in support of both the motions raises triable issues of fact whether plaintiff was engaged in the replacement of overhead door parts that occurred due to normal wear and tear (see Esposito, 1 NY3d at 528) or whether the work being performed by plaintiff at the time of the accident was necessary to restore the proper functioning of an otherwise inoperable overhead door (see Brown v Concord Nurseries, Inc., 37 AD3d 1076, 1077 [4th Dept 2007]).
Defendants further contend on their appeal that the court erred in denying their motion with respect to the Labor Law § 240 (1) claim and in granting plaintiff's motion with respect to the 14th affirmative defense because they established as a matter of law that plaintiff was the sole proximate cause of his injuries. We reject that contention. In support of their motion, defendants submitted an affidavit from an expert who opined that plaintiff was the sole proximate cause of his accident because he improperly stood on the second to last step of the ladder at the time of his fall and shifted his weight, as well as plaintiff's deposition testimony wherein plaintiff admitted that he understood it to be unsafe to stand on the top two steps of the ladder. The expert offered no opinion, however, on whether the eight-foot A-frame ladder was adequate to allow plaintiff to safely complete his assigned task at the time of the accident without standing on the top two steps. In opposition to defendants' motion and in support of his motion, plaintiff offered an affidavit from his own expert, who opined that the eight-foot ladder provided to plaintiff was not an adequate safety device because it could not be positioned in the car wash bay so as to permit plaintiff to access the bearing and shaft on which he was working without standing on the top step of the ladder and reaching forward. Defendants never addressed the opinion of plaintiff's expert, but argued in their reply that plaintiff testified at his deposition that he had "selected his ladder for the project and confirmed it was appropriate for the work he was going to perform."
Initially, there is no dispute that the only safety devices available for plaintiff's use on the job site at the time of the accident were two eight-foot A-frame ladders. Thus, this is not a case where plaintiff exercised his judgment in using the top step of the eight-foot A-frame ladder but "there were [more appropriate] ladders on the job site, . . . [plaintiff] knew where they were stored, and that he routinely helped himself to whatever tools he needed rather than requesting them from the foreman" (Robinson v East Med. Ctr., LP, 6 NY3d 550, 554-555 [2006]; see generally Cahill v Triborough Bridge & Tunnel Auth., 4 NY3d 35, 40 [2004]).
Next, plaintiff testified at his deposition that he considered an eight-foot A-frame ladder to be appropriate, i.e., "safe or tall" enough, to complete work on a 10-foot overhead door generally and he thought that this ladder "probably might" be "sufficient" to perform the work on the car wash overhead door. Plaintiff, however, further testified that an eight-foot ladder would be chosen "if [the customer] did[ not] want to pay for a platform lift," he did not choose the safety devices on the day of his accident, he could not recall having ever worked on the overhead doors at this particular job site before his accident, and the overhead door on which he was working at the time of the accident was not "a standard overhead door. It was a special type of door that was used in car washes." Plaintiff was not asked and offered no opinion during his deposition on the placement of the ladder or his ability to perform his assigned work in the car wash bay without utilizing the top two steps of the ladder. This is therefore also not a case where a plaintiff has offered a fact-based assessment of the adequacy of a safety device for the particular task in which the plaintiff was engaged at the time of the accident (cf. Martin v Niagara Falls Bridge Commn., 162 AD3d 1604, 1605 [4th Dept 2018]; Weitzel v State of New York, 160 AD3d 1394, 1395 [4th Dept 2018]). Thus, there is no evidence in the record that contradicts the opinion of plaintiff's expert that the eight-foot A-frame ladder provided to plaintiff was inadequate because it could not have been placed so as to provide proper protection to plaintiff during his work on the bearing and shaft of the car wash overhead door at the time of the accident (see generally Labor Law § 240 [1]). Plaintiff therefore established his entitlement to judgment as a matter of law dismissing the sole proximate cause affirmative defense; any failure by plaintiff to refrain from standing on the top steps of the ladder amounts to no more than comparative negligence, which is not a defense under Labor Law § 240 (1) (see Fronce v Port Byron Tel. Co., Inc., 134 AD3d 1405, 1407 [4th Dept 2015]; Kazmierczak v Town of Clarence, 286 AD2d 955, 955-956 [4th Dept 2001]; see generally Blake v Neighborhood Hous. Servs. of N.Y. City, 1 NY3d 280, 289-290 [2003]). For the same reason, the court properly denied defendants' motion with respect to the Labor Law § 240 (1) claim insofar as it was based upon the ground that plaintiff was the sole proximate cause of his injuries.
All concur except Peradotto and NeMoyer, JJ., who dissent in part and vote to modify in accordance with the following memorandum: We respectfully dissent in part because, contrary to the majority's conclusion, plaintiff failed to meet his initial burden on his motion of establishing as a matter of law that he was not the sole proximate cause of the accident. We would therefore modify the order by denying plaintiff's motion insofar as it sought summary judgment dismissing the 14th affirmative defense and reinstating that defense.
"Where a 'plaintiff's actions [are] the sole proximate cause of his [or her] injuries, . . . liability under Labor Law § 240 (1) [does] not attach' " (Robinson v East Med. Ctr., LP, 6 NY3d 550, 554 [2006]; see Cahill v Triborough Bridge & Tunnel Auth., 4 NY3d 35, 39-40 [2004]; Blake v Neighborhood Hous. Servs. of N.Y. City, 1 NY3d 280, 290 [2003]). Instead, for liability to attach, "the owner or contractor must breach the statutory duty under section 240 (1) to provide a worker with adequate safety devices, and this breach must proximately cause the worker's injuries" (Robinson, 6 NY3d at 554). "These prerequisites do not exist if adequate safety devices are available at the job site, but the worker either does not use or misuses them" (id.). Additionally, "[o]n a motion for summary judgment, the facts must be viewed in the light most favorable to the non-moving party . . . , and every available inference must be drawn in the [non-moving party's] favor" (Matter of Eighth Jud. Dist. Asbestos Litig., 33 NY3d 488, 496 [2019] [internal quotation marks omitted]). Here, although plaintiff submitted the affidavit of his expert, who averred that the eight-foot ladder was not an adequate safety device for the height of the job and that a scissor lift was the appropriate device to complete the work, plaintiff also submitted conflicting evidence in the form of his own deposition inasmuch as his testimony, viewed in the appropriate light, indicates that he considered and adjudged the eight-foot ladder adequate to safely perform the assigned work on the subject 10-foot overhead car wash door.
In particular, plaintiff testified that his supervisor would inform him that a service call involved a 10-foot overhead door and instruct him to take an appropriate ladder, which plaintiff understood to mean a ladder that was safe and tall enough to work on that overhead door. Plaintiff later testified, upon further questioning on the appropriate height of a ladder, that he would use an eight-foot A-frame ladder to perform work on a 10-foot overhead door and that, for the type of service call involving such a door, he would be instructed by his supervisor to take an eight-foot A-frame ladder. The favorable inference that must be drawn from that testimony, given our standard of review, is that plaintiff and his supervisor considered an eight-foot ladder to be safe and tall enough to complete work on a 10-foot overhead door. Plaintiff's testimony that he would use an eight-foot A-frame ladder on a 10-foot overhead car wash door was not, contrary to the majority's characterization, general testimony about a generic overhead door. In characterizing plaintiff's testimony in that manner, the majority improperly divorces plaintiff's answer from the context of the questioning. Rather, viewed in the appropriate light, plaintiff's answer was in response to the culmination of questioning on the topic whether using an eight-foot A-frame ladder would be adequate—i.e., safe and tall enough—to work upon an overhead car wash door, like the one at issue, with a height of 10 feet.
Moreover, plaintiff expressly testified that, in his judgment, he thought the work could be completed safely using the eight-foot A-frame ladder that he had been provided for this particular job. Admittedly, plaintiff also testified that, in situations where he found the equipment provided to be unsafe for the job, he would call his supervisor to resolve the issue and that his supervisor would not have answered at the time in the evening that plaintiff was working on the subject car wash door. That hypothetical situation is, however, inapposite here because, according to plaintiff's own testimony, he adjudged that the work could be safely performed with the equipment provided. In addition, when asked whether the eight-foot A-frame ladders that had been provided to him and his coworker were "sufficient to do the work that [they] were doing in that particular [car wash] bay," plaintiff testified that, upon making an assessment, he thought that the ladders "probably might" be adequate to perform the work.
In sum, while plaintiff's expert stated definitively that the eight-foot ladder was not an adequate safety device for the height of the job, plaintiff himself contradicted that view inasmuch as his testimony, viewed in the light most favorable to defendants and with every available inference drawn in their favor, shows that plaintiff thought the provided eight-foot ladder was adequate to safely perform the assigned work on the subject 10-foot overhead car wash door. Such conflicting evidence presents a classic issue of fact with respect to whether an adequate safety device was provided.
With respect to causation, we conclude that, " '[u]nlike those situations in which a safety device fails for no apparent reason, thereby raising the presumption that the device did not provide proper protection within the meaning of Labor Law § 240 (1), here there is a question of fact [concerning] whether the injured plaintiff's fall [resulted from] his own misuse of the safety device and whether such conduct was the sole proximate cause of his injuries' " (Thome v [*2]Benchmark Main Tr. Assoc., LLC, 86 AD3d 938, 940 [4th Dept 2011]; see Bahrman v Holtsville Fire Dist., 270 AD2d 438, 439 [2d Dept 2000]). In particular, plaintiff testified that, based on his safety training, it was never appropriate to stand on the second step from the top or the top cap of an A-frame ladder. Plaintiff further acknowledged that, if he was standing on the second step from the top, he would be going against his safety training. Plaintiff also testified that he would read the safety warning labels on ladders if such labels were not scratched or torn off, and photographs of the ladder that plaintiff was using at the time of the accident showed a label on the second step from the top that stated: "Do Not Stand at or above this level. YOU CAN LOSE YOUR BALANCE." Despite all of the warnings and safety training, plaintiff acknowledged during his deposition that the surveillance video depicted him standing on the second step from the top of the ladder just before the accident. Indeed, screenshots from the surveillance video submitted by plaintiff in support of his motion depict plaintiff improperly standing on the second step from the top before the ladder tips to the right as plaintiff loses his balance and falls toward the floor before landing on and denting the leg of the tipped ladder with his body.
Inasmuch as unnecessarily standing on the second step from the top of an A-frame ladder constitutes misuse of such a ladder, and plaintiff was depicted standing on the ladder in that manner just before the fall, we conclude that plaintiff's submissions raised an issue of fact whether it was necessary for plaintiff to be on that step in order to perform his work on the 10-foot overhead door and, if not, whether plaintiff's own actions were the sole proximate cause of the accident (cf. Kosinski v Brendan Moran Custom Carpentry, Inc., 138 AD3d 935, 936 [2d Dept 2016]; Miller v Spall Dev. Corp., 45 AD3d 1297, 1298-1299 [4th Dept 2007]). Unlike other cases, there is evidence here that plaintiff knew at the time of the accident that his use of the second step from the top of the A-frame ladder was unsafe (cf. Kin v State of New York, 101 AD3d 1606, 1608 [4th Dept 2012]), and plaintiff's misuse of the ladder is not based on conjecture but rather on plaintiff's own testimony and surveillance video of the accident (cf. Kirbis v LPCiminelli, Inc., 90 AD3d 1581, 1582 [4th Dept 2011]; Woods v Design Ctr., LLC, 42 AD3d 876, 877 [4th Dept 2007]).
Taken all together, we conclude that "questions of fact exist as to whether 'the ladder failed to provide proper protection,' whether 'plaintiff should have been provided with additional safety devices,' and whether the ladder's purported inadequacy or the absence of additional safety devices was a proximate cause of plaintiff's accident" (Cutaia v Board of Mgrs. of the 160/170 Varick St. Condominium, 38 NY3d 1037, 1039 [2022]). Thus, contrary to the majority's conclusion, the court erred in granting plaintiff's motion insofar as it sought summary judgment dismissing defendants' sole proximate cause defense because, on this record, "there is a plausible view of the evidence—enough to raise a fact question—that there was no statutory violation and that plaintiff's own acts or omissions were the sole cause of the accident" (Blake, 1 NY3d at 289 n 8). Defendants should be able to litigate those issues before a trier of fact.
Entered: November 18, 2022
Ann Dillon Flynn
Clerk of the Court